UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JIVONNIE JONES,

    Plaintiff,            Hon. Gordon J. Quist

v.                     Case No. 1:10-CV-300

ANNE MAROULIS, et al.,

    Defendants.
_____/


**REPORT AND RECOMMENDATION**

    This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #38). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.


**BACKGROUND**

    The following allegations are contained in Plaintiff's complaint. On April 20, 2009, Plaintiff was examined by Anne Maroulis, R.N. Plaintiff reported that he wanted his ears cleaned out to eliminate "excessive ear wax." While Nurse Maroulis was cleaning out Plaintiff's right ear, Plaintiff began experiencing "overwhelming bad pain" and blood began "gushing out" of his right ear. Plaintiff believed that Nurse Maroulis had punctured his ear drum and reported that he "needed to go to the hospital for emergency treatment." Nurse Maroulis ignored Plaintiff's request and also failed to provide him with pain medication.

As Plaintiff was being escorted back to his cell, he informed Corrections Officer Gorman that he "needed emergency treatment." Gorman told Plaintiff, "that's not my problem, you better put in another kite like Maroulis said." Later that day, Corrections Officer Patterson delivered Plaintiff his lunch. When Patterson opened the food slot to Plaintiff's cell, Plaintiff informed him that he required medical treatment. Patterson told Plaintiff to "put in another kite." At this point, Plaintiff "took [his] food slot hostage by placing an arm on the slot so staff could not close the slot." Sergeant King responded to this incident, at which point Plaintiff reiterated that he required medical treatment. King told Plaintiff that if he did not remove his arm from the food slot, pepper spray would be used to gain his compliance. Plaintiff immediately complied. Later that day, Plaintiff completed a health care request form which was "ignored" by Christy Jastifer, R.N.

On April 22, 2009, Plaintiff was examined by Nurse Maroulis. Plaintiff complained to Maroulis that she had "punctured [his] right ear drum" two days earlier. Maroulis examined Plaintiff's right ear, after which she provided Plaintiff with medication. On April 24, 2009, Plaintiff was examined by Physician's Assistant Michael Kennerly, who prescribed "new medications" that improved Plaintiff's condition. On April 27, 2009, Plaintiff was again examined by P.A. Kennerly. Plaintiff reported that he was experiencing "pressure and pain" in his right ear, in response to which P.A. Kennerly modified Plaintiff's medication regimen. Plaintiff was examined by P.A. Kennerly the following day as well.

On May 1, 2009, Plaintiff submitted a health care request because his hearing was "getting worse." On May 7, 2009, Plaintiff was examined by P.A. Kennerly. Plaintiff reported that he was not experiencing any pain in his right ear, but that his ability to hear had decreased to approximately seventy-five percent. P.A. Kennerly scheduled Plaintiff to participate in an audiology examination. On October 7, 2009, Plaintiff participated in an audiology examination, the results of which "showed

abnormal hearing." On October 15, 2009, Plaintiff met with Dr. Richard Czop to discuss the results of the audiology examination. Plaintiff requested that he be provided hearing aids, but the doctor "ignored" Plaintiff's request. On January 20, 2010, Plaintiff again requested that he be provided hearing aids. This request was denied by Betty Kemp, R.N.

Plaintiff initiated the present action on March 29, 2010, against Anne Maroulis, R.N., Christy Jastifer, R.N., Michael Kennerly, P.A., Dr. Richard Czop, Corrections Officer Gorman, Corrections Officer Patterson, Sergeant King, Unknown Klinesmith, and Willie Smith. Plaintiff asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Defendants Maroulis, Jastifer, Gorman, Patterson, King, Klinesmith, and Smith now move for summary judgment. As detailed herein, the undersigned recommends that Defendants' motion be granted.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has

had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.     Exhaustion**

Defendants first assert that they are entitled to relief because Plaintiff has failed to properly exhaust administrative remedies regarding the claims asserted in his complaint. As discussed below, the Court only partly agrees.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine

whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

In support of their motion, Defendants have provided copies of two grievances that Plaintiff has pursued. Defendants assert that neither of these grievances properly exhaust the claims articulated in Plaintiff's complaint. Plaintiff has not alleged that he filed any other grievances, but instead asserts that the two grievances he submitted sufficiently exhaust the claims in his complaint.

A.  Grievance ICF-09-04-0966-28B

Plaintiff filed this grievance on April 20, 2009, regarding an incident that allegedly occurred earlier that day. (Dkt. #40, Exhibit F). In this grievance, Plaintiff asserted that an unidentified "nurse" injured his right ear while cleaning it out. Plaintiff asserted that this nurse then failed to "give [him] meds for the pain." Plaintiff alleged that later that day he informed the "unit officer" that he needed medical treatment for his ear. When the unit officer "refused to get the nurse," Plaintiff "had to take the food slot hostage on him." According to Plaintiff, "the sergeant" then arrived and likewise "refused to get the nurse." Plaintiff pursued this grievance through all three steps of the MDOC grievance process.

Defendants argue that this grievance fails to exhaust any of the claims in Plaintiff's complaint because the grievance was rejected for failure to comply with the requirement that Plaintiff identify by names all those involved in the issue being grieved. The Court is unpersuaded. First, while Plaintiff's grievance was denied at Steps I and II for failure to comply with this requirement, there is no indication that the grievance was denied at Step III because of Plaintiff's failure to properly identify the people involved in the incidents being grieved. Instead, it appears that Plaintiff's grievance was denied on the merits at Step III. In other words, the last decision regarding Plaintiff's grievance does not appear to have been based on Plaintiff's alleged failure to comply with MDOC grievance policy.

Plaintiff has also submitted an affidavit in which he asserts that he was unable to identify the individuals in question by name because they were not wearing name tags and "refused" his requests to provide their names. (Dkt. #53, 57). Plaintiff also asserted such in another grievance he filed several weeks later. (Dkt. #40, Exhibit G). Plaintiff asserts that he did not learn the names of the individuals in question until much later. (Dkt. #53, 57). Defendants have submitted no evidence to the contrary.

While Plaintiff did not identify by name the individuals involved in the incident giving rise to the grievance, he provided sufficient detail to enable prison officials to investigate the matter. While Plaintiff must comply with the MDOC's procedural requirements for filing and pursuing grievances, his efforts to grieve a particular matter are sufficient where such "gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 Fed. Appx. 738, 740 (6th Cir., June 3, 2009); *see also*, *Schafer v. Curry*, 2009 WL 1562957 at *6 (N.D. Cal., June 3, 2009) (the underlying purpose of the exhaustion requirement is to afford to prison officials sufficient notice regarding prisoner complaints so that they can in the first instance attempt to resolve the issue); *Uriarte v. Schwarzenegger*, 2008 WL 696924 at *7 (S.D. Cal., Mar. 13, 2008) (same).

The Court finds, therefore, that Plaintiff properly pursued this grievance through all three steps of the grievance process. Having so concluded, the Court must identify the claims in Plaintiff's complaint that are properly exhausted by this grievance. In this respect, the Court finds that this grievance exhausts certain claims concerning the alleged events of April 20, 2009. Specifically, this grievance exhausts Plaintiff's claims that: (1) Defendant Maroulis injured his right ear, after which she refused to provide him with pain medication; and (2) Defendants Patterson and King later refused his requests for "emergency treatment." As discussed above, Plaintiff also asserts in his complaint that on April 20, 2009, Defendant Gorman, as he was escorting Plaintiff to his cell, refused Plaintiff's request for emergency medical treatment. Such claim is not properly exhausted by this grievance, as it is not addressed therein.

B.     Grievance ICF-09-05-1023-28B

Plaintiff filed this grievance on April 29, 2009, concerning an incident that allegedly occurred earlier that day. (Dkt. #40, Exhibit G). Plaintiff alleges in this grievance that an unidentified nurse was "harassing" him and "trying to cover up" the April 20, 2009 incident with Defendant Maroulis. This grievance was rejected at all three steps of the grievance process because Plaintiff failed to comply with the requirement that he identify by names all those involved in the issue being grieved. This determination was appropriate, as the grievance failed to give prison officials fair notice of the matter(s) being grieved. The Court further notes that Plaintiff's complaint contains no allegations concerning any incident that allegedly occurred on April 29, 2009. This grievance, therefore, fails to exhaust any claim asserted in Plaintiff's complaint.

Accordingly, for the reasons discussed above, the Court finds that Plaintiff has properly exhausted only the following claims: (1) on April 20, 2009, Defendant Maroulis injured Plaintiff's right ear, after which she refused to provide Plaintiff with pain medication; and (2) later that same day, Defendants Patterson and King refused Plaintiff's requests for "emergency treatment." The Court finds that Plaintiff has failed to properly exhaust all other claims asserted in his complaint.

**II.    Eighth Amendment**

Having determined that Plaintiff properly exhausted the claims identified above, the Court turns to the question whether Defendants Maroulis, Patterson, and King are entitled to summary judgment as they assert.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and

are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). A serious medical need has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

To the extent, however, that Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (if prison officials responded reasonably to a substantial risk to an inmate's health or safety, they may avoid liability – even if the harm ultimately was not averted).

A.  Defendant Maroulis

Plaintiff asserts that Defendant Maroulis punctured his ear drum when she attempted to clean his ear, after which she refused to provide him with pain medication. First, Plaintiff's claim that Defendant Maroulis injured his ear when she provided him with medical treatment sounds in state negligence law. As noted above, claims of medical negligence do not implicate the Eighth Amendment. Accordingly, Defendant is entitled to relief as to this claim.

As for Plaintiff's claim that Defendant failed to provide him with pain medication, the Court reaches the same conclusion. Defendant Maroulis has submitted an affidavit in which she asserts that on April 20, 2009, she attempted to "clean the wax from Plaintiff's right ear." (Dkt. #39, Exhibit B). Defendant asserts that while she was cleaning Plaintiff's ear, Plaintiff complained of discomfort at which point she "stopped the procedure." Defendant "attempted once more to irrigate [Plaintiff's] right ear," but after Plaintiff "experienced pain" she again "discontinued further cleaning." Defendant then

examined Plaintiff's right ear and noted "no redness or irritation." Defendant provided Plaintiff with mineral oil, with instructions to use it in his ear at night to "soften his ear wax." *Id.* Defendant's assertions are consistent with medical treatment notes completed at the time of the examination in question. (Dkt. #40, Exhibit I).

Defendants Gorman, Patterson, and King have also submitted affidavits in which they assert that during their encounters with Plaintiff on April 20, 2009, they observed no evidence or indication that Plaintiff was experiencing any impairment or circumstance that required medical attention. (Dkt. #39, Exhibits C-D; Dkt. #40, Exhibit E). These assertions are likewise confirmed by the medical evidence of record. (Dkt. #40, Exhibit I).

Defendant Maroulis examined Plaintiff's right ear two days later, observing "irritation" but no evidence of bleeding. Plaintiff was given Motrin, instructed to stop using the mineral oil, and scheduled for a follow-up examination. On April 24, 2009, Plaintiff was examined by Physician's Assistant Kennerly. An examination of Plaintiff's right ear revealed "swelling," for which Amoxicillin and Motrin were prescribed. When Plaintiff was examined on April 27, 2009, he reported that he was experiencing "less pressure sensation" in his right ear. Plaintiff was diagnosed with an ear infection. His right ear was irrigated and he was given medicated ear drops. An examination conducted the following day by P.A. Kennerly revealed no evidence that Plaintiff's ear drum had been punctured. P.A. Kennerly reiterated that Plaintiff was suffering an ear infection. *Id.*

In sum, the medical evidence reveals that on the date in question Plaintiff was suffering from, at most, a minor ear infection. Thus, Plaintiff cannot satisfy the objective prong of the analysis as he was not "incarcerated under conditions posing a substantial risk of serious harm." Moreover, as discussed above, Defendant Maroulis treated Plaintiff, but simply failed to provide him the treatment

he desired. While Plaintiff may be dissatisfied with the treatment he received, or believes that Defendant Maroulis committed malpractice, such fails to implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Maroulis is entitled to summary judgment as to Plaintiff's claims concerning the events of April 20, 2009.

B.   Defendants Patterson and King

Plaintiff was treated by Defendant Maroulis on April 20, 2009. Plaintiff asserts that later that same day, Defendants Patterson and King refused his requests for "emergency treatment." As discussed above, there is no evidence that Plaintiff was suffering from any condition or circumstance that required emergency or urgent medical treatment. Instead, the evidence reveals that Plaintiff was suffering from a minor ear infection for which he received medical treatment. There is likewise no evidence that Defendants Patterson or King knew or had reason to know that Plaintiff was allegedly suffering from any condition that required emergency or urgent medical treatment or care beyond that he was then receiving from licensed medical professionals.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (dkt. #38), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 20, 2011                    /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge